ELECTRONIC CITATION: 2003 FED App. 0002P (6th Cir.)
File Name: 03b0002p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: THE V COMPANIES, et al., | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| JEFFERSON COUNTY BOARD OF COUNTY | ) |
| COMMISSIONERS; | ) |
| VIRGIL E. BROWN, TRUSTEE, | ) |
| | ) |
| Plaintiffs - Appellees, | ) |
| | ) |
| v. | ) No. 02-8051 |
| | ) |
| CHRISTINE A. VOINOVICH; DEBORAH | ) |
| VOINOVICH McCANN; PAUL M. | ) |
| VOINOVICH; VOCON DESIGN, INC., | ) |
| | ) |
| Defendants - Appellants. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Cleveland.
No. 00-10145; Adv. No. 02-1007.

Argued: March 5, 2003

Decided and Filed: May 1, 2003

Before: AUG, HOWARD, and LATTA, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Michael D. Zaverton, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Cleveland, Ohio, for Appellants. Alan R. Lepene, THOMPSON HINE, Cleveland, Ohio, for Appellees. **ON BRIEF:** Michael D. Zaverton, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Cleveland, Ohio, for Appellants. Alan R. Lepene, THOMPSON HINE, Cleveland, Ohio, for Appellees.

_____

**OPINION**

_____

WILLIAM S. HOWARD, Bankruptcy Appellate Panel Judge. Appellants, Christine A. Voinovich, Deborah Voinovich McCann, Paul M. Voinovich and Vocon Design, Inc. appeal the order of the bankruptcy court denying their motion to dismiss an adversary proceeding filed against them by the Jefferson County Board of County Commissioners ("the Board"). The bankruptcy court's order also substituted Virgil E. Brown, the Chapter 7 Trustee ("the Trustee"), as the plaintiff in the adversary proceeding. For the reasons set out below, we **AFFIRM** the bankruptcy court's decision.

## I. ISSUE ON APPEAL

The issue before the Panel is whether the bankruptcy court erred as a matter of law in determining that the Board had derivative standing to pursue avoidance actions against the Appellants. In deciding that issue the Panel must specifically consider whether the Sixth Circuit case of *Canadian Pac. Forest Prods., Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436 (6th Cir. 1995) is effectively overruled by the Supreme Court case of *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S. Ct. 1942 (2000).

The Appellants also contend that the bankruptcy court erred in substituting the Trustee as plaintiff in the adversary proceeding. Their position was based on their contention that the Trustee could not be substituted for a party whose standing to sue was granted in error. In light of our decision concerning the issue of derivative standing, we need not address this issue.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. The "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the

litigation on the merits and leaves nothing for the courts to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (internal quotations and citations omitted). The denial of a motion to dismiss is not a final order. *Archie v. Lanier,* 95 F.3d 438, 442 (6th Cir. 1996); *Kelly, Howe & Scott v. Giguere* (*In re Giguere*), 188 B.R. 486, 488 (D.R.I. 1995). However, the panel may grant leave to appeal absent a motion for leave to appeal, if a notice of appeal is timely filed. *See United States v. Eggleston Works Loudspeaker Co.* (*In re Eggleston Works Loudspeaker Co.*), 253 B.R. 519, 521 (B.A.P. 6th Cir. 2000). The Panel granted leave to appeal on December 3, 2002.

Conclusions of law are reviewed de novo. *See Nicholson v. Isaacman* (*In re Isaacman*), 26 F.3d 629, 631 (6th Cir. 1994). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted).


## III. FACTS

The Appellants, Christine A. Voinovich, Deborah Voinovich McCann, Paul M. Voinovich, and Vocon Design, Inc., are all officers/directors/insiders of The V Companies, Inc. and V-S Architects, Inc., the Debtors in this case, and are some of the defendants in the above-referenced adversary proceeding. The Debtors were involved in construction and project management businesses. In a prior opinion approving the conversion of the Debtors' cases to cases under chapter 7, the bankruptcy court gave an in-depth description of the relationships between the Debtors and their various affiliates, officers, directors and shareholders, including the Appellants. *See In re V Companies*, 274 B.R. 721 (Bankr. N.D. Ohio 2002). The Debtors are controlled by Paul V. Voinovich who is the spouse of Appellant Christine A. Voinovich, and the father of Appellants Deborah Voinovich McCann and Paul M. Voinovich. Further, Christine A. Voinovich is the sole shareholder of Appellant Vocon Design, Inc. which is operated by her children, Deborah Voinovich McCann and Paul M. Voinovich. *Id* at 728-29, 736.

The bankruptcy cases (jointly administered) were originally filed under Chapter 11 on January 7, 2000. The Debtors operated the companies as debtors-in-possession for over two years. On May 2, 2001, the U.S. Trustee filed a motion to convert to Chapter 7. While the motion was pending, the Board sought leave of court to pursue avoidance actions for the benefit of the Debtors' estates. During the course of the case, the Board requested that the Debtors file adversary actions against several individuals and entities to recover allegedly fraudulent and preferential transfers. The Board asserted that various officers, directors, shareholders and insiders of the Debtors, including the Appellants, had engaged in practices that resulted in the Debtors' insolvency and bankruptcy.

These alleged practices include organizing and operating competing companies, diverting Debtors' assets to other affiliates, selling property in which the Debtors had an interest without accounting for the Debtors' interests and other unlawful practices to the detriment of the Debtors' estates. The Debtors refused to file any avoidance actions. After a hearing on January 7, 2002, the bankruptcy court granted the Board leave to file a complaint against the Appellants and others within the two year limitations period set out in 11 U.S.C. § 546(a). The complaint sought to avoid transfers made by the Debtors to nineteen defendants, including Appellants.

The bankruptcy court entered an order converting the cases from Chapter 11 to Chapter 7 on March 8, 2002, finding that cause existed for conversion of the cases based on the failure of the debtors-in-possession (or Debtors) to provide meaningful information about their finances, their filing of materially inaccurate operating reports, fiduciary breaches by management in engaging in questionable transactions, and self-dealing. The Trustee was appointed on March 12, 2002, but did not become the case trustee until April 16, 2002. On April 17, 2002, he filed a motion seeking to add himself as co-plaintiff with the Board in the adversary proceeding. Meanwhile, on March 25, 2002, the Appellants had filed a motion to dismiss the complaint on the grounds that the Board lacked standing to pursue avoidance actions.

The bankruptcy court denied the motion to dismiss on August 2, 2002, and on the same date substituted the Trustee as the sole plaintiff in the adversary proceeding. The Appellants filed their notice of appeal on August 12, 2002, without seeking leave to appeal

4

the interlocutory order. The Panel issued an order to show cause why the appeal should not be dismissed for lack of appellate jurisdiction. As previously stated, on December 3, 2002, the Panel issued an order pursuant to 28 U.S.C. § 158(a)(3) granting the Appellants leave to appeal, and directing the parties to address the issue of derivative standing.

## IV. DISCUSSION

The Appellants' contend that a creditor may not be granted derivative standing to pursue an avoidance action as the power to bring such actions is granted exclusively to the trustee pursuant to 11 U.S.C. §§ 547 and 548. These sections provide that "the trustee may avoid" preferential and fraudulent transfers, respectively. The Appellants' position is based on the Supreme Court's ruling in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S. Ct. 1942 (2000) that an administrative claimant does not have independent standing to bring a claim under 11 U.S.C. § 506(c), and that in fact "entities other than the trustee are not entitled to use § 506(c)." *Id.* at 7. Section 506(c) provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." The Appellants contend that the ruling in regard to this section must inform any determination in regard to any statute which delineates the powers of the trustee.

When the bankruptcy court granted the Board leave to file the adversary proceeding, it did so pursuant to the holding in *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group)*, 66 F.3d 1436, 1438 (6th Cir. 1995). There the court held that

> a bankruptcy court may permit a single creditor in a Chapter 11 case to initiate an action to avoid a preferential or fraudulent transfer instead of the debtor-in-possession if the creditor: 1) has alleged a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court; 2) has made a demand on the debtor-in-possession to file the avoidance action; 3) the demand has been refused; and, 4) the refusal is unjustified in light of the statutory obligations and fiduciary duties of the debtor-in-possession in a Chapter 11 reorganization.

*Id.* The bankruptcy court determined that the Board had met these conditions, and granted leave to file the adversary proceeding. As the bankruptcy court points out in its opinion, *Gibson Group* is binding precedent in this Circuit unless and until it is inconsistent with a later Supreme Court decision or the Circuit overrules it.

The Appellants do not deny that the Board met the conditions set out in *Gibson Group*, but contend that it is no longer viable in light of the decision in *Hartford Underwriters*, even though the Supreme Court addressed neither the issue of derivative standing nor the *Gibson Group* decision. In fact, in footnote 5 of its decision in *Hartford Underwriters*, the Supreme Court stated:

> We do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c). *Amici* American Insurance Association and National Union Fire Insurance Co. draw our attention to the practice of some courts of allowing creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions, see 11 U.S.C. §§ 544, 545, 547(b), 548(a), 549(a), mention only the trustee. See, *e.g., In re Gibson Group, Inc.,* 66 F.3d 1436, 1438 (C.A.6 1995). Whatever the validity of that practice, it has no analogous application here, since petitioner did not ask the trustee to pursue payment under § 506(c) and did not seek permission from the Bankruptcy Court to take such action in the trustee's stead. Petitioner asserted an independent right to use § 506(c), which is what we reject today. Cf. *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202-203 (C.A.7 1988) (holding that creditor had no right to bring avoidance action independently, but noting that it might have been able to seek to bring derivative suit).

*Hartford Underwriters*, 530 U.S. at 13, n. 5. The Appellants dismiss the footnote as a mere deferral of the Supreme Court's ruling on the issue of derivative standing as that issue was not before it. A more accurate reading of footnote 5, however, is that the Court declined to extend its ruling in the context of derivative standing ("[The practice of allowing creditors or creditors' committees to bring avoidance actions] has no analogous application here."). The Court further made it clear that it was only addressing the right to pursue § 506(c)

actions ("Petitioner asserted an independent right to use § 506(c), which is what we reject today.").

The Appellee points out that the Appellants ignore statutes that plainly provide for derivative standing, i.e., 11 U.S.C. §§ 1107 and 1109.  Section 1107(a) gives the court discretion to place limits and conditions on the rights, duties and power of a debtor-in-possession acting in the place of a trustee.  Section 1109(b) gives interested creditors the right to appear and "raise . . . any issue" in a Chapter 11 case.  When the respondent in *Hartford Underwriters* raised § 1109 as indicative of the right of a nontrustee to recover under § 506(c), the Court first made it clear that it was considering the issue before it in the specific context of a Chapter 7 case:  "[Section 1109], which provides that a 'party in interest' 'may raise and may appear and be heard on any issue under [Chapter 11],' is by its terms inapplicable here, since petitioner's attempt to use § 506(c) came after the bankruptcy proceeding was converted from Chapter 11 to Chapter 7."  *Hartford Underwriters,* 530 U.S. at 7.  The Court then went on to quote in part from 7 Lawrence P. King, Collier on Bankruptcy ¶ 1109.05 (15th ed. rev. 1999) in its discussion of the effect (or lack thereof) of § 1109:  "'In general, section 1109 does not bestow any right to usurp the trustee's role as representative of the estate with respect to the initiation of certain types of litigation that belong exclusively to the estate.'"  *Id. at 8-9.*

After an acknowledgment that this represents the Supreme Court's position as set out in *Hartford Underwriters*, ¶ 1109.05 goes on to read as follows:

> [C]onsistent with the broad right of participation conferred by section 1109(b), the court may authorize a party in interest to commence litigation on behalf of the estate if certain conditions are satisfied.
> As a general rule, the Bankruptcy Code assigns responsibility for the initiation of certain causes of action to the trustee or debtor in possession.  These include so-called "bankruptcy actions," such as preference actions, proceedings to recover fraudulent transfers, objections to claims and the like.  . . . Although the ultimate beneficiaries of any of these proceedings may be the debtor's creditors or equity participants, the privilege of prosecuting the action, and of initially determining whether to commit the estate's resources to doing so, lies with the trustee.

On the other hand, the trustee's discretion is by no means absolute.  Similarly, the situation may be such that the trustee's decision not to pursue a particular action (or more likely, the debtor in possession's decision in a chapter 11 case), may be colored by self interest or a conflict of some kind.  For example, in certain cases it may be unrealistic to assume that a corporate debtor in possession will be willing to commence a cause of action if the defendants include the sitting officers of the debtor or members of the debtor's board of directors.  Ultimately, at the behest of other parties in interest, the court may intervene and authorize someone other than the trustee to commence litigation on behalf of the estate.

Collier on Bankruptcy ¶ 1109.05, at 1109-46 to -47.  This reasoning recognizes that in avoidance actions a debtor-in-possession has the same powers as a trustee, but not necessarily the same perspective and interest in the bankruptcy estate, and the question of who may be empowered to bring such an action must therefore be analyzed in a completely different context than that presented by a claimant asserting an independent right to invoke § 506(c).  Further, there is nothing in the *Hartford Underwriters* opinion that does away with the requirement that statutory language be considered in context.

As stated by the court in *Gibson Group*,

In determining that neither 11 U.S.C. § 547 nor § 548 preclude the judicially-created doctrine of derivative standing, we conclude that the express statutory language does not prohibit creditor standing, and that such standing furthers Congress's purpose in balancing the interests between the debtor and its creditors in a Chapter 11 reorganization.  Section 547(b) provides that "the trustee may avoid any [preferential] transfer ....," and Section 548(a) provides that "[t]he trustee may avoid any [fraudulent] transfer...."  A debtor-in-possession has all the powers of a trustee.  11 U.S.C. § 1107(a).  Thus, although the starting point for our inquiry is the language used by Congress, *In re First Truck Lines, Inc.*, 48 F.3d 210, 213 (6th Cir. 1995) (*citing Estate of Floyd Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 474-76, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992)), we are faced with a situation where we must determine whether Congress intended to confer exclusive authority on the trustee to bring avoidance actions in a Chapter 11 case if the debtor abuses its discretion in not bringing such an avoidance action.  A debtor-in-possession often acts under the influence of conflicts of interest and may be tempted to use its discretion

8

under Sections 547 and 548 as a sword to favor certain creditors over others, rather than as a tool to further its reorganization for the benefit of all creditors as Congress intended. Given this reality, we do not believe Congress intended to exclude creditors from seeking to avoid preferential or fraudulent transfers where the debtor-in-possession abuses its discretion.

*Gibson Group*, 66 F.3d at 1440-1441. As set out above, the power of the bankruptcy court to authorize a party other than the trustee or debtor-in-possession to pursue avoidance actions is implicated in this discussion. Bankruptcy courts have possessed this power for more than 100 years. The court in *In re Godon, Inc.*, 275 B.R. 555 (Bankr. E.D. Cal. 2002) provides an edifying discussion of the treatment of pursuit of avoidance actions by others than the trustee:

> It has been a settled feature of bankruptcy law since 1898 that creditors may recover property for the benefit of the estate and have their attorneys' fees reimbursed by the estate.
> Under the former Bankruptcy Act, the reimbursable creditor recovery doctrine started as judge-made law.
> Then, in 1903, Bankruptcy Act § 64 was amended to make explicit what had already been determined to be implicit:
>> (a) The debts to have priority, . . . , and to be paid in full out of bankrupt estates, and the order of payment, shall be: (1) . . . ; where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, is recovered for the benefit of the estate of the bankrupt by the efforts and at the cost and expense of one or more creditors, the reasonable costs and expenses of such recovery; . . . Bankruptcy Act § 64(a)(1), 11 U.S.C. § 104(a)(1) (redesignated from § 64(b)(2) in 1938) (repealed in 1978).
> Creditors acting for the benefit of the estate were allowed to use the name of the bankruptcy trustee.
> A limitation imposed by case law was that once a trustee was appointed, a creditor usually needed permission from the trustee or court before acting.

*Id*. at 561-562.  While the statutory language set out above does not specifically empower a creditor to recover property of the estate, it obviously contemplates such action and provides that the costs of it may be reimbursed.

The Supreme Court in *Hartford Underwriters* rejected the notion of support in the Bankruptcy Act or Bankruptcy Act cases for non-trustee action under § 506(c):

> Section 506(c)'s provision for the charge of certain administrative expenses against lienholders continues a practice that existed under the Bankruptcy Act of 1898[.] . . . (Cites omitted).  It was not to be found in the text of the Act, but traced its origin to early cases establishing an equitable principle that where a court has custody of property, costs of administering and preserving the property are a dominant charge[.]  It was the norm that recovery of costs from a secured creditor would be sought by the trustee[.]  Petitioner cites a number of lower court cases, however, in which–without meaningful discussion of the point–parties other than the trustee were permitted to pursue such charges under the Act, sometimes simultaneously with the trustee's pursuit of his own expenses[.]
>
> . . .
>
> It is questionable whether these precedents establish a bankruptcy practice sufficiently widespread and well recognized to justify the conclusion of implicit adoption by the Code.  We have no confidence that the allowance of recovery from collateral by nontrustees is "the type of 'rule' that . . . Congress was aware of when enacting the Code."  *United States v. Ron Pair Enterprises, Inc.*,   489 U.S. [235] at 246, 109 S. Ct. 1026 [(1989)].

*Hartford Underwriters*, 530 U.S. at 9-10 (citations omitted).  As set out earlier, pre-Code statutory and case law "establish a bankruptcy practice sufficiently widespread and well recognized" in regard to the power of the court to grant a creditor standing to pursue avoidance actions to support the conclusion of implicit adoption of this practice in the Code.  *Id.*  The Supreme Court's determination that such is not the case in regard to § 506(c) actions is therefore not applicable to our consideration here.

In fact, courts have continued, even since the decision in *Hartford Underwriters*, to grant nontrustees derivative standing to pursue avoidance actions.  Recently a bankruptcy court specifically rejected the same argument being made by the Appellants here, and held

that the unsecured creditors' committee had derivative standing to commence and prosecute such an action. *Official Comm. of Unsecured Creditors v. Pardee (In re Stanwich Fin. Servs. Corp.)*, 288 B.R. 24, 25-26 (Bankr. D. Conn. 2002). In addressing the arguments based on *Hartford Underwriters* the court stated:

> The respondents, ..., assert that the Committee lacks standing because the bankruptcy code only authorizes a trustee or debtor in possession to commence a fraudulent transfer claim. They argue that the language "the trustee may" utilized generally in the bankruptcy code necessarily eliminates all other parties from prosecuting a fraudulent transfer claim. That argument fails because the precise textual interpretation of one section cannot and should not be blindly applied to another. *See United States v. Cleveland Indians Baseball Company*, 532 U.S. 200, 217, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001) ("statutory construction is a holistic endeavor ... the meaning of a provision is clarified by the remainder of the statutory scheme when only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.") (*quoting United Saving Assn. v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S. Ct. 626, 98 L.Ed.2d 740 (1988). *See also Varity Corp. v. Howe*, 516 U.S. 489, 519, 116 S.Ct. 1065, 134 L. Ed. 2d 130 (1996) (Thomas, J., dissenting) ("We would have to read [ERISA] § 502(a)(3) in a vacuum ... to find in respondents' favor.")

*Stanwich Fin. Servs. Corp.,* 288 B.R. at 25-26. *See also In re Newcorn Enters. Ltd.*, 287 B.R. 744 (Bankr. E.D. Mo. 2002).

The Appellants make reference to *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 304 F.3d 316 (3rd Cir. 2002), *reh'g granted and opinion vacated*, 310 F.3d 785 (3d. Cir. 2002), as a case in which a circuit court has agreed that *Hartford Underwriters* requires that only the trustee (or a debtor-in-possession) may bring an avoidance action. In *Cybergenics*, the Third Circuit initially found that *Hartford Underwriters* barred the unsecured creditors committee from filing a derivative action. Because the opinion was vacated, however, it provides no authority for this Panel. At most *Cybergenics* indicates a potential disagreement among the circuits concerning the issue of derivative standing. Unless and until it is specifically overruled, *Gibson Group* remains

11

authoritative in the Sixth Circuit.  Significant law and comment support both *Gibson Group* and the decision of the bankruptcy court here.

## V.  CONCLUSION

The Panel concludes that *Gibson Group* is not inconsistent with *Hartford Underwriters,* and the decision in *Gibson Group* remains good law which all courts in the Sixth Circuit are bound to follow.  The bankruptcy court properly granted the Board derivative standing to file the adversary complaint against the Appellants, and the court's decision denying the Appellants' motion to dismiss the complaint is therefore **AFFIRMED**.